IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAUL AND DEBRA GUSTAFSON, <br>   for themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 2:20-cv-2272 |
| v. | |
| TRAVEL GUARD GROUP, INC., <br>   a Wisconsin Corporation | JURY TRIAL DEMANDED |
| and | |
| NATIONAL UNION FIRE INSURANCE <br> COMPANY OF PITTSBURGH, PA., <br>   a Pennsylvania Insurance Company | |
| and | |
| AIG TRAVEL, INC., <br>   a Delaware Corporation | |
| and | |
| AIG TRAVEL ASSIST, INC., <br>   a Delaware Corporation | |
| Defendants. | |

## **COMPLAINT – CLASS ACTION**

Plaintiffs Paul Gustafson and Debra Gustafson ("Plaintiffs" or the "Gustafsons"), for themselves and for all other persons similarly situated, allege the following upon personal knowledge as to themselves and their acts, and upon information and belief as to all other persons and matters:

### **NATURE OF THIS CIVIL ACTION**

1.     This is a class action for damages, restitution and equitable relief against

Defendants Travel Guard Group, Inc. ("Travel Guard Group"), National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), AIG Travel, Inc. ("AIG Travel"), and AIG Travel Assist, Inc. arising from Defendants' uniform practice and policy pursuant to which Defendants refuse to refund and return unearned insurance premiums and other amounts to their policyholders when planned travel that Defendants insure is canceled before departure, and thus, will never occur.

2. Plaintiffs seek to end and obtain relief for the wrongful conduct of Defendants toward Plaintiffs and other similarly-situated travel insurance policyholders. Plaintiffs for themselves and the defined class of policyholders they seek to represent (a) all booked travel and purchased travel insurance from Defendants that provided specifically identified pre-departure and post-departure insurance coverages and benefits for protection against an array of pre-departure and post-departure risks incident to travel, (b) were charged and paid Defendants the total cost of the travel insurance in advance of the trip for both *pre-departure coverages and benefits*, which became effective on payment and ended before departure, and *post-departure coverages and benefits*, which Defendants *could only earn and provide once travel began*, and (c) did not begin travel because the covered trip was canceled *prior to departure* by a travel service provider, the policyholder, or for some other reason, and (d) who did not thereafter receive a pro rata refund or other portion of or restitution for the amounts Plaintiffs and the other policyholders paid in advance for the *post-departure coverages and benefits* that were specifically included and described in each of Defendants' travel plans, and which Defendants did not earn, perform or provide, and knew they would and could never earn, perform or provide because each of the covered trips was canceled before travel began. As a direct result of Defendants' conduct, Plaintiffs and the policyholder class they seek to represent suffered injury in the form of monetary loss by having

paid premiums and/or other amounts for insurance coverages and benefits that Defendants were not exposed to, and for which Defendants never assumed any transferred risk or could ever earn or provide.

3.     Travel insurance policies like those at issue here are marketed and sold to provide reimbursement in the event of financial loss or hardship incident to planned travel. Insurance is available to cover a variety of travel-related risks, including (a) certain risks arising *before travel begins*, such as the possibility that a traveler must cancel a trip due to illness and will lose a pre-paid, nonrefundable deposit as a result, and (b) other, separate contingencies and risks that attach *only after travel begins*, such as travel interruption, a medical emergency, or lost, damaged or stolen luggage.

4.     Travel Guard has been in the travel insurance business for over forty years and offers travel insurance and emergency travel assistance plans to the traveling public. Like its competitors, Travel Guard markets and sells a number of standardized travel insurance products (referred to as "Travel Guard Insurance Policies" or "Travel Guard Plans") both on an annual basis and for a single trip. A Travel Guard annual plan is not trip-specific and provides insurance for multiple trips throughout the year. In contrast, a Travel Guard single-trip policy covers only the risks associated with a single, specific trip. This action relates exclusively to Defendants' single-trip plans.

5.     Each single-trip Travel Guard Plan includes and specifically identifies both pre-departure and post-departure coverages and benefits to protect the policyholder for contingencies arising before and during travel. Defendants' Travel Guard Plans group such insurance coverages and benefits and non-insurance services in pre-packaged bundles. Defendants' single-trip Travel Guard Plans are flexible and can include any or all of the coverages and benefits that Defendants

offer.

6.     All of Defendants' single-trip Travel Guard Insurance Policies are memorialized through a standardized procedure using uniform standard policy forms applicable to all purchasers, regardless of the insurance coverages and benefits that end up being included in the plan.

7.     All of Defendants' single-trip Travel Guard Insurance Policies include and specifically distinguish between "pre-departure" and "post-departure" coverages and benefits and provide that the "post-departure" coverages and benefits do not begin until after the insured trip starts.

8.     For example, the Deluxe, Preferred and Essential, and corresponding Platinum, Gold and Silver, Travel Guard Plans all provide the policyholder with coverage for "Trip Cancellation" to reimburse the policyholder for losses that occur when an insured trip is or must be canceled by the policyholder or for any covered reason *before departure and travel begins*. Each of Defendants' Travel Guard Plans likewise provides the policyholder with coverage for "Trip Interruption," which in contrast to trip cancellation, provides reimbursement for covered losses a policyholder sustains when she/he is unable to continue on a trip due to a covered event or circumstance. Defendants' Travel Guard Plans can likewise provide the policyholder with Medical Expense Benefits and travel assistance that only apply when an injury, sickness or event first occurs on or during travel.  As the terms of their own insurance policies establish, Defendants acknowledge that these risks and corresponding coverages and benefits for trip interruption, medical expenses, and the like do not arise, and can never attach, if the policyholder cannot begin travel.

9.     To purchase a Travel Guard Insurance Policy and insure a planned trip, Defendants require the policyholder to pay the total cost of the Travel Guard Plan in advance of the trip, once

booked.

10.     When a leisure or business traveler pays for a single-trip Travel Guard Insurance Policy, she or he receives a "policy summary page" and the actual Policy of Insurance containing the terms and conditions for the coverages and benefits applicable if a covered risk attaches and a loss ensues both before and during travel. The policy summary page identifies the Travel Guard Insurance Policy by number and effective date, the Travel Guard Plan, the Trip Details including the departure and return dates, the policyholder's Contact Information, the Insured(s), the specific Coverages and Benefits and corresponding Limits of the packaged plan, and the total premium and other costs paid.

11.     The total cost Defendants charge and collect in advance for each of their offered Travel Guard Plans comprises the sum of the various premiums and amounts Defendants assess for each specific policy coverage and benefit included with the particular plan that Defendants issue.

12.     Defendants assess, charge and collect a specific premium for each of the pre-departure and post-departure coverages and benefits included in each Travel Guard Insurance Policy, and Defendants can readily state the portion or calculate a pro rata amount of the total premium or other amount collected in advance for each of the separate pre-departure and post-departure coverages and benefits comprising a particular policyholder's Travel Guard Insurance Policy.

13.     The total cost that Defendants charge and collect for the itemized pre-departure and post-departure coverages and benefits included with every single-trip Travel Guard Insurance Policy and Plan is in the first instance based on a set of identifiable contingencies for which Defendants have agreed to assume the risk of loss through the listed coverages and benefits once

they begin.

14. Even though Defendants' travel insurance policies uniformly include and expressly distinguish between "pre-departure" and "post-departure" coverages and benefits, and specifically provide that the "post-departure" coverages and benefits to be afforded under the policy do not begin until after travel starts, when the risk of loss to be assumed can first attach, Defendants do not refund the portion of the premium the policyholders pre-paid for the post-departure coverages and benefits, even though such risks and the corresponding coverages for which the policyholders paid Defendants did not and will not ever arise, exist or attach, when an insured trip is canceled before departure.

15. Even though each of Defendants' single-trip Travel Guard Insurance Policies include coverages and benefits protecting the policyholder against travel-related risks that can *only arise during travel*, and which have zero possibility of occurring or attaching prior to commencement of the single-insured trip, Defendants do not refund or return the portion of the premium attributable to such post-departure coverages and benefits for risks that did not and can never occur.

16. Defendants' refusal to refund and Defendants' retention of the premiums and unearned sums generated when an insured trip is canceled before departure is unlawful, inequitable and unjust.

17. Contrary to the no-refund policy adopted by Defendants when covered travel is canceled prior to departure, Defendants are obligated by applicable law to return a pro rata or other portion of the premium and amounts paid for the coverage and benefits that only begins post-departure. In such a situation, as is present here, a pro rata or other portion of the premium and other amounts paid for the coverage and benefits in exchange for the post-departure coverages and

benefits is unearned and unearnable, inasmuch as the coverages and benefits never became effective under the terms of the policies and Defendants were never at risk of having to cover the perils of actual travel. In this situation, Defendants have failed to provide consideration in return for their retention of the pro rata or any other portion of the gross premium and related costs, which must always be paid in advance of travel for the post-departure and other provided coverages and benefits.

18.     All of Defendants' Travel Guard Insurance Policies designate pre-departure and post-departure coverages as discrete risk categories that do not take effect contemporaneously. Defendants' pre-departure coverage is effective upon receipt of payment, but the post-departure coverage and benefits are not effective upon receipt of payment, but become effective only after travel begins. Defendants' post-departure coverages and benefits, in contrast, are not effective until departure, which ordinarily is the date on which travel begins. Defendants do not agree to and thus do not assume the risks associated with any of the post-departure contingencies for which the policyholders purchased post-departure coverages and benefits unless and until the covered travel actually begins.

19.     Defendants' promises of coverage and benefits for post-departure risks as provided in the Travel Guard Plans is expressly conditioned on the policyholder's actual departure, and thus, Defendants' refusal to refund the premium amounts attributable to the coverages and benefits for post-departure risks renders Defendants' promised coverage illusory when a trip is canceled before departure.

20.     Defendants' conduct in charging and collecting premium amounts as consideration in exchange of the coverages and benefits identified in the travel insurance policies they market and sell, and Defendants' corresponding decision to retain and withhold the unearned portion of

the premium justly due to their policyholders for the specifically identified post-departure coverages and benefits that did not attach, and which Defendants could not earn, perform or provide, has been deliberately and systematically applied by Defendants to Plaintiffs and numerous other Travel Guard policyholders, and is such that the adjudication of Plaintiffs' claims as a class action is appropriate.

21.     Plaintiffs and the similarly-situated Travel Guard policyholders they seek to represent in this action are without an adequate remedy at law. None of the Travel Guard Insurance Policies addresses Defendants' obligation to refund a pro rata or other portion of a premium or amount paid in advance for what the policy specifically identifies as post-departure coverages and benefits when the risks and need for such coverages and benefits can and will never attach, and for which Defendants thus will never be obligated or capable of earning, performing or providing, when a covered trip is canceled, for whatever reason, before departure, and while the policy is in effect.

22.     The Travel Guard Insurance Policies do not provide any right of relief to Plaintiffs and the similarly-situated policyholders they seek to represent to recover and recoup the premiums and other amounts they paid Defendants for coverage against a specific set of travel-related contingencies that Defendants did not and could never assume because the risks did not and could never attach.

## THE PARTIES, JURISDICTION AND VENUE

23.     Plaintiffs Paul and Debra Gustafson at all relevant times have resided in Johnson County, Kansas.

24.     Travel Guard Group is a Wisconsin corporation with its principal place of business in Wisconsin. Travel Guard Group is authorized to transact business in and is licensed as an

insurance producer in all 50 states and the District of Columbia.

25.     National Union is a Pennsylvania insurance company with its principal place of business in New York. National Union is authorized to transact business in all 50 states and the District of Columbia.

26.     AIG Travel is a Delaware corporation with its principal place of business in a state other than Kansas.

27.     AIG Travel Assist is a Delaware corporation with its principal place of business in Texas. AIG Travel Assist, Inc. is authorized to transact business in and is licensed as an insurance producer in all 50 states and the District of Columbia.

28.     Travel Guard Group, National Union, AIG Travel and AIG Travel Assist are all owned by American International Group, Inc. ("AIG"). Given Defendants' relationship and the use of "Travel Guard" in reference to multiple AIG entities, Travel Guard Group, National Union, AIG Travel, and AIG Travel Assist, Inc. are referred to collectively and singularly as "Defendants."

29.     This Court has original jurisdiction over the claims asserted by Plaintiffs, both individually and on behalf of the policyholder Class as hereinafter defined pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005. Subject matter jurisdiction is proper because: (1) the matter in controversy is reasonably expected to exceed the sum or value of $5,000,000, exclusive of interest and costs; (2) there are more than 100 members of the Class; (3) at least one member of the Class is diverse from Defendants; and (4) no Defendant is a government entity.

30.     Personal jurisdiction is proper because Defendants have purposefully availed themselves of the privilege of conducting business within the state of Kansas and have each

submitted to the jurisdiction of the courts of this state for the claims for relief that Plaintiffs are asserting because the stated claims for relief arise from the acts of Defendants, individually or through an agent or instrumentality, in contracting to insure Plaintiffs and other persons and risks located in Kansas at the time of contracting, entering into express or implied contracts, by mail or otherwise, with Plaintiffs and other residents of Kansas, to be performed in whole or in part in this state, and otherwise transacting business, committing tortious acts, and causing injury to Plaintiffs and other persons in this state while engaged in solicitation or service activities in Kansas, as alleged herein.

31.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims for relief that Plaintiffs are asserting occurred in this District and/or because Defendants are all residents of this judicial district for purposes of venue.

## FACTUAL ALLEGATIONS

**A.     Travel Guard Insurance Policies and Travel Plans.**

32.     "Travel Guard" is one of the nation's largest travel insurance providers. Leisure and business travelers can purchase Travel Guard travel insurance products through a number of distribution channels, e.g., travel agents (online or at traditional "brick-and-mortar" locations), the Travel Guard website, a travel service provider's website, or other third-party web-based booking platforms.

33.     National Union underwrites and issues all of the travel insurance policies that Travel Guard sells.

34.     Travel Guard Group, alone and/or together and with the authority of Defendants AIG Travel, Inc. and AIG Travel Assist, Inc. (collectively "AIG Travel"), individually and/or as

the mutual agents, representatives and alter egos of each other and/or one or more AIG-affiliated entities including but not limited to AIG Americas, LLC, AIG Travel EMEA Limited, AIG Travel Asia Pacific Pte. Ltd. and Travel Guard Asia Pacific Pte. Ltd. (collectively "Travel Guard") ostensibly offer to provide a number of "non-insurance" travel-related services that are listed in the Travel Guard Plans.

35.    Pursuant to agreements among Defendants, Travel Guard is responsible for collecting all amounts charged and paid for the insurance that National Union underwrites and any non-insurance travel services that Travel Guard, alone or through or together with others, agrees to provide.

36.    Defendants Travel Guard Group and AIG Travel were at all relevant times acting individually and as a duly authorized agent of Defendant National Union and possessed express and/or implied authority to offer, sell and administer the Travel Guard Plans to leisure and business travelers.

37.    Defendant National Union was at all relevant times acting individually and as a duly authorized agent of Defendants Travel Guard and AIG Travel and possessed express and/or implied authority to underwrite and issue the Travel Guard Plans that Travel Guard offered and sold.

38.    Defendants Travel Guard Group and AIG Travel are appointed insurance producers of National Union, which has surrendered all control of the marketing, sale and administration of the Travel Guard Insurance Policies it underwrites and issues to Defendants Travel Guard and AIG Travel.

39.    Defendants' Travel Guard Plans are written to provide varying levels and types of travel-related insurance coverages and benefits and a number of "non-insurance" services.

Included among the Travel Guard Insurance Policies currently listed on the Travel Guard website are the Deluxe, Preferred and Essential Travel Guard Plans, which are "available in all states and the District of Columbia, except FL, MN, MO, NY, and WA." A second set of single-trip Travel Guard Plans, identified on the Travel Guard website as the Platinum, Gold and Silver plans, is offered for residents of the five listed states other than New York, where Defendants' single-trip Travel Guard Plans are referred to as the "Cruise, Tour & Travel," "Protect Assist," and "Essential Expanded" plans.

40.     Defendants market and sell their Travel Guard Plans as being tailored to the traveler's needs. The "Travel Guard Deluxe" Travel Guard Plan is marketed as Travel Guard's "best travel insurance with the most coverages, global travel assistance and access to 24/7 travel assistance services"; the "Travel Guard Preferred Plan" is marketed as "comprehensive travel insurance" with "new and expanded coverage"; the "Travel Guard Essential" plan is marketed as Travel Guard's "budget-friendly travel insurance plan ... perfect for business travel and domestic travel with basic coverage amounts"; the "Travel Guard Platinum" plan is marketed as Travel Guard's "best travel insurance plan with global travel assistance and access to 24/7 travel assistance services"; the "Travel Guard Gold Plan" is marketed as "comprehensive travel insurance"; and the "Travel Guard Silver" plan is marketed as Travel Guard's "basic and budget-friendly travel insurance plan ... perfect for business travel and general travel with basic coverage amounts."

41.     Regardless of the purchase platform used, or the specific limits, coverages and benefits included in any Travel Guard Plan, Defendants as a matter of course and standard practice, do not refund a pro rata or other portion of the amounts charged and collected in advance for what the policy specifically identifies as "post-departure" coverages and benefits when the risks and

need for such coverages and benefits become moot and can and will never attach, and for which Defendants thus will never be or become obligated or capable of earning, performing or providing, when a covered trip is canceled, for whatever reason, before a trip begins, while the policy is in effect.

42.     Defendants' practice is wrong. When covered travel is canceled *after payment but before departure*, Defendants have at most earned and are entitled to keep only that portion of the total cost charged and collected for the insurance covering the "pre-departure" risks (trip cancellation coverage, for example), as specifically identified and described in each of Defendants' Travel Guard Insurance Policies. Defendants, however, have not earned and are not entitled to justly retain and keep the other, readily identifiable amounts Defendants separately charged and collected in advance as a premium for the insurance covering the post-departure benefits (for example, trip interruption, lost baggage, and medical and dental expense coverage) because the cancellation of the trip before departure nullified Defendants' promise and obligation to provide coverage and benefits for the specific set of contingencies that never did and never will arise, exist or attach under the policy.

43.     When a policyholder's insured trip is canceled *after a travel plan is purchased*, *but before travel begins*, the array of travel-related risks for which the policyholders paid Defendants money as consideration for the separate, specifically itemized and identifiable and coverages and benefits Defendants agreed to provide only after a covered trip begins can never arise or attach, and thus, Defendants did not and could never assume any risk of loss or performance for these post-departure benefits.

44.     Defendants know that when insured travel is canceled before travel begins, an "unearned" premium and other amounts corresponding to the separate post-departure coverages

13

and benefits exist because the risks and services for which Defendants charged and collected the policyholders' money up-front will never attach, and also that Defendants can and will never earn, provide or perform such coverages or benefits. Yet, Defendants uniformly, systematically and unjustly charge and collect, and refuse to refund and return such unearned and unearnable amounts to their policyholders.

45. Such "unearned" premiums for the post-departure coverages and benefits are generated whether Defendants, the travel provider or the policyholder cancels the trip before departure.

46. Notwithstanding Defendants' definitive inability to ever earn, provide or perform any post-departure coverages or benefits when a covered trip is canceled *after payment but before departure*, Defendant refuse to refund the "unearned" premium Defendants charged and collected for the post-departure coverages and benefits to their policyholders and instead retain and withhold the same.

47. Defendants' policy and practice of not refunding a pro rata or other portion of the premiums and amounts paid for the post-departure coverages and benefits when an insured cannot commence an insured trip is unlawful, inequitable and unjust because Defendants are retaining a monetary benefit conferred upon them by their policyholders in the form of a pre-paid premium under circumstances making it inequitable and unjust for Defendants to retain the benefit conferred.

48. By charging and collecting insurance premiums and other costs associated with their Travel Guard Plans in advance of travel, Defendants have created and seek to perpetuate a business model through which they are able to collect travel premiums from the policyholders to cover and provide assistance with numerous risks that Defendants never accept or assume, and for

which the risk of loss is never transferred when an insured trip is canceled before departure and cannot occur.

49.     When travel insured by Defendants is canceled for whatever reason prior to departure and commencement of the covered trip, Defendants are never placed in a position of risk that the post-departure perils for which the insurance was purchased will arise. As such, it is unjust and inequitable for Defendants to retain that portion of the premium attributable to post-departure risks.

50.     When an insured trip is canceled *before departure*, Defendants are obligated to promptly refund a pro rata or other portion of the total costs Defendants charged and collected in advance for the post-departure insurance coverages and benefits that did not become effective or protect the policyholder from any travel-related risks issues until travel actually begins, and for which Defendants never were, and could never be, exposed or assume any risk, since the trip canceled.

51.     When an insured trip is canceled before the scheduled departure date or travel begins, Defendants are by their contract relieved of any obligation to provide any of the coverages or benefits for any of the risks that by definition can never attach and cannot ever arise or occur, and thus, Defendants have received and are retaining a substantial and valuable benefit in the form of money paid in advance to provide insurance and benefits that Defendants know have not and cannot be earned because the perils and risks for which the money was paid to Defendants will never attach.

52.     When an insured trip is canceled before the scheduled departure date, Defendants are required but systematically refuse to refund and return the unearned portion of the premium and other amounts paid to Defendants in advance for travel insurance, including the full amount

of the premium amounts attributable to and purportedly providing coverage for any post-departure perils.

53.     Defendants' premium refund policy and practice does not differ between the variously-named Travel Guard Plans.

**B.     The Gustafsons' Travel Guard Plan.**

54.     On or about January 28, 2020, Plaintiffs Paul and Debra Gustafson booked an Alaskan cruise with Princess Cruise Lines including round-trip air travel from Kansas City, Missouri to Anchorage, Alaska, with travel set to begin on August 25, 2020, and end on September 2, 2020.

55.     At or about the time they booked their trip, the Gustafsons purchased a Travel Guard Plan from Defendants to insure their trip, specifically a standard Travel Guard Preferred Plan, Policy No. 943635707. The policy included both pre- and post-departure benefits. The pre-departure benefits included a benefit for Trip Cancellation. The post-departure benefits included Accidental Death/Dismemberment Trip Interruption, Missed Connection, Travel Medical Expense, Baggage Coverage, Baggage Delay, and Concierge Services. The Gustafsons' policy states that coverage for the post-departure benefits is not effective before departure and the Covered Trip begins.

56.     When the Gustafsons purchased their Travel Guard Plan, Defendants charged and collected $410.27 from the Gustafsons and credited or paid and distributed the funds among Defendants.

57.     Like the other Travel Guard policyholders they seek to represent, the Gustafsons purchased their Travel Guard Plan to provide reimbursement in the event of financial loss or hardship relating to a water and/or land trip that they booked through a travel agent and/or one or

16

more travel service providers.

58.     Like the other members of the Travel Guard policyholder class they seek to represent, the Gustafsons received their Travel Guard Insurance Policy and summary page after they paid the total cost.

59.     Like those similarly provided or made available by Travel Guard to the other members of the policyholder class the Gustafsons seek to represent, the Gustafsons' policy summary page identifies the number of the Insurance Policy that was sold and issued, the policy effective date, the name of the Travel Guard Plan sold and issued, the Trip Details including the departure and return dates, the policyholder Contact Information, the Insureds on the policy, the specific Coverages and Benefits and corresponding Limits, and the total cost of the premium and any other amount paid.

60.     Like the other members of the Travel Guard policyholder class they seek to represent, the Gustafsons pre-paid the total premiums and any other costs to Defendants in advance of the trip.

61.     Like those set forth in the Travel Guard Plans purchased by the other members of the Travel Guard policyholder class the Gustafsons seek to represent, the Gustafsons' Travel Guard Insurance Policy and Plan distinguished between pre-departure and post-departure risks and expressly provided that Defendants would not be obligated to provide or perform any of the listed post-departure coverages or benefits until the later of the scheduled departure date or the date the covered trip begins. The listed post-departure coverages or benefits were not effective until the covered trip began.

62.     The Gustafsons' Travel Guard Insurance Policy provided:

**WHEN COVERAGE BEGINS**

**Pre-Departure Benefits**
Trip Cancellation coverages are effective at 12:01 A.M. ***Standard Time*** on the date following payment to the ***Company*** of the required cost.

**Post-Departure Benefits**
All other coverages will begin on the later of:
(a) 12:01 A.M. ***Standard Time*** on the scheduled ***Departure Date*** shown on the travel documents; or
(b) the date and time the ***Insured*** starts his/her ***Trip***

**WHEN COVERAGE ENDS**

**Pre-Departure Benefits**
Trip Cancellation coverages end on the earlier of: (a) the cancellation of the ***Insured's Trip***; or (b) 11:59 P.M. on the day before the scheduled ***Departure Date***.

**Post-Departure Benefits**
All other coverages end on the earliest of:
(a) the ***Insured's*** arrival at the ***Return Destination***, even if this occurs earlier than the scheduled ***Return Date***; or
(b) the scheduled ***Return Date***.

63.     The language of the above provisions, stating when post-departure coverage and benefits would begin, is the same or substantially the same as the provision in all of Defendants' Insurance Policies.

64.     Like the other members of the Travel Guard policyholder class they seek to represent, the Gustafsons did not seek to cancel their Travel Guard Insurance Policy within the specified number of days after purchase that applicable state law and/or Defendants allow for a "Free Look" cancellation.

65.     On or about April 15, 2020, Princess Cruise Lines canceled the trip the Gustafsons had earlier booked due to the COVID-19 pandemic and various government restrictions and orders banning travel.

66.     After the Gustafsons' trip was canceled, Defendants notified the Gustafsons

through a travel agent on April 17, 2020 that "because the Corona Virus [sic] was classified as a pandemic by WHO 11 March," Defendants would not be "covering nonrefundable trip expenses or refunding the cost of the insurance premium [, but would instead be] providing a refund in the form of a voucher that can be used towards the purchase of a future premium for up to 2 years from the date of issue."

67.     In conjunction with their voucher offer to the Gustafsons and other policyholders, Defendants deemed the corresponding travel insurance plans as canceled, with coverage no longer in effect.

68.     Defendants' refusal and failure to refund and return the unearned premium amounts to the Gustafsons was in accordance with Defendants' uniform policy and practice to impermissibly retain and withhold from their policyholders the unearned premiums generated when a covered trip is canceled before travel begins and any post-departure risks can effectively attach.

69.     Defendants have yet to provide the Gustafsons with the referenced time-restricted "voucher," but if ever issued to or made available to them, the Gustafsons will not accept the voucher.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs bring this action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, for themselves and for a proposed nationwide class of similarly-situated persons (the "Class"), preliminarily defined as:

> All persons (including natural persons, companies, corporations, partnerships, joint stock companies, associations, clubs and other associations) who, while in the United States, or as residents of the United States, purchased a single-trip travel insurance plan from Defendants that provided coverages and benefits for contingencies and events arising once travel starts, and who did not receive a refund of the pro rata or other portion of the premium and any other amount paid for such

"post-departure" coverages and benefits when the trip insured by the plan was canceled before travel started.

Excluded from the Class are (a) any policyholders who timely canceled their trip within the "free look" period allowed by applicable law, (b) Defendants, their joint or respective officers, directors, employees, representatives, heirs, successors and wholly- or partly-owned subsidiaries or affiliates, (c) the Court and Court staff and the immediate family members of each, and (d) Walters Renwick Richards Skeens & Vaughan, P.C., it attorneys and employees, the immediate family members of each, and their heirs, successors and assigns.

71.     The number of persons who are members of the Class as proposed is so numerous that joinder of all members in a single civil action is impracticable. The number of policyholders whose covered trips were canceled before departure and who did not thereafter receive a refund from Defendants is reasonably estimated to be at least in the thousands given the magnitude of Defendants' travel insurance business. Although the precise number, names and addresses of all Class members are not yet known to Plaintiffs, that information, including the identity of the insureds and the policies, plans and coverages purchased, is readily ascertainable from Defendants' records.

72.     The claims of the Class all derive directly from an apparent, uniform and systematic policy of Defendants of refusing to refund or return premiums and other amounts for specifically listed post-departure insurance coverages and benefits and non-insurance services that Defendants did not and/or could never "earn" or provide because the insured trips were canceled before travel began.

73.     The objective facts are the same for all members of the Class in that: (a) each paid insurance premiums and other amounts to Defendants as consideration for a specific Travel Guard Plan providing packaged benefits, including separate coverages and benefits for "post-departure" travel risks that did not become effective until travel began; (b) the covered trip of each member of the Class was canceled before travel began; and (c) Defendants refused to refund to Plaintiffs

and the members of the Class the pro rata or any other portion of the premium and any other amounts paid in advance for the specifically identified "post-departure" coverages and benefits that Defendants agreed to provide after travel began (whether or not requested by Plaintiffs or the Class members).

74.     Defendants did not differentiate, in degree of care or candor, their conduct among Plaintiffs and the members of the Class in regard to Defendants' decision and uniform policy to retain and withhold the unearned, risk-free premiums the policyholders paid to insure post-departure perils, which were never covered or insured by Defendants because the trips were canceled before departure. The objective facts for these matters are the same for Plaintiffs and Class members. Within the claims for relief that Plaintiffs are asserting, the same legal standards govern the resolution of the same operative facts existing across all Class members' individual claims.

75.     Because the claims of Plaintiffs and the Class have a common origin and share a common basis in regard to Defendants' misconduct, there are common questions of fact and law existing as to each Class member under Federal Rule of Civil Procedure 23(a)(2), which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b).

76.     Substantial questions of fact and law that are common to all members of the Class, and which control this litigation and predominate over any individual issues, include but are not limited to the following:

      a.    Whether Defendants, as a matter of course and policy, uniformly and systematically refused to refund to their policyholders unearned, risk-free premiums paid to cover a specifically identified set of post-departure perils whenever the planned trip for which the Class members had purchased travel insurance from Defendants was canceled before departure;

b.   Whether the coverages and benefits for which the policyholders paid Defendants premiums for the specifically identified "post-departure" coverages and benefits in advance of travel ever became or could ever begin or become effective as provided in Defendants' Travel Guard Plans when the insured trips were canceled before departure;

c.   Whether by virtue of the Class members' insured trips being canceled prior to departure, the risks for which the policyholders paid Defendants a premium for the specifically identified "post-departure" coverages and benefits ever attached such that Defendants assumed an actual risk of loss capable of triggering such coverages and benefits;

d.   Whether Defendants provided or could provide consideration in exchange for premiums paid in advance to cover post-departure perils that did not and could never arise or attach;

e.   Whether by virtue of the Class members' insured trips being canceled prior to departure, Defendants retained unearned premiums;

f.   Whether it would be unjust for Defendants to retain and withhold the *pro rata* or other portion of the premium paid for post-departure coverage, whenever an insured trip is canceled before departure;

g.   Whether an "unearned" premium for the post-departure coverages and benefits exists whether Defendants, a travel service provider, or the policyholder cancels the covered trip before departure;

h.   Whether Defendants assess any amounts in addition to what they deem or classify as an insurance premium for any non-insurance, travel-related service and that calculation, if any;

i.   Whether Defendants, as a matter of course and policy, uniformly and systematically refused to refund to their policyholders any amounts in addition to the unearned premiums that the Class Members paid for any non-insurance, travel-related services whenever the planned trip for which the Class members had purchased a travel plan was canceled before departure;

j.   Whether any of the non-insurance, travel-related services for which the policyholders paid Defendants fees or other amounts in advance of travel ever became or could ever begin or become effective or could be performed by Defendants when the insured trips canceled before departure;

k.   Whether Defendants provided or could provide consideration in exchange for the amounts paid in advance for any non-insurance, travel-related services relating to the post-departure coverages and benefits, whenever an insured trip is canceled before departure;

l.      Whether it would be unjust for Defendants to retain and withhold the *pro rata* or other portion of any amounts paid in advance for any non-insurance, travel-related services relating to the post-departure coverages and benefits, whenever an insured trip is canceled before departure;

m.      Whether Defendants canceled or sought to cancel Travel Guard Insurance Policies without refunding the unearned premiums due;

n.      Whether Defendants' Travel Insurance Plans address the entitlement of the policyholders to a refund of any unearned, risk-free premiums paid for post-departure perils that were never actually insured;

o.      Whether Defendants' Travel Insurance Plans contain any provision precluding a policyholder from obtaining a premium or other refund after the applicable period for a "free look" at the policy and plan expires;

p.      Whether Defendants' Travel Insurance Plans provide that a policyholder's timely compliance with any "free-look" cancellation provision is the sole basis for obtaining a premium refund under the policy.

q.      Whether Defendants' failure to refund or return any unearned premiums or other amounts under the Travel Guard Plans constituted a breach of the insurance contracts between Defendants and the Class members;

r.      Whether Defendants apply their no-refund policy to the Class and when the non-refund policy began;

s.      Whether Defendants' no-refund policy is the same for each of the variously-named Travel Guard Plans;

t.      Whether Defendants offered time-restricted travel insurance vouchers or other credits to the Class;

u.      Whether the time-restricted travel insurance vouchers or other items Defendants offered to the Class members in lieu of a refund satisfied Defendants' obligation to refund and return the unearned premiums and other amounts due to the members of the policyholder Class;

v.      Whether Defendants' conduct in offering or selling Travel Guard Insurance Policies constitutes unlawful conduct in violation of the Pennsylvania Uniform Trade Practices Consumer Protection Law, 73 Pa.C.S.A. § 201-1, et. seq., because the travel insurance policies that Defendants offered and sold as providing insurance coverage and benefits for post-departure events could never result in the payment of any claims for any insured under the policy under the circumstances typical of the Class members' claims in this action, as herein alleged.

77.     Plaintiffs' claims against Defendants are typical of the claims of the Class, and arise from the same course of conduct undertaken by Defendants against the Class as a whole. There are no conflicts between the interests of the named Plaintiffs and the interests of the other members of the Class. The relief Plaintiffs seek is typical of the relief sought for the members of the Class.

78.     Plaintiffs will fairly and adequately represent and protect the interests of the Class given their common injury and interests and the common conduct of Defendants as directed at and applicable to Plaintiffs and the Class, and because Plaintiffs have retained competent counsel, experienced in class action litigation, who will adequately represent and protect the interests of the Class.

79.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

80.     As described in detail above, Plaintiffs' cause and action and claims for relief are based on the same common course of conduct and business policy through which Defendants have wrongfully retained and withheld, and will continue to wrongfully retain and withhold unearned premiums and others amounts to which they are not entitled. Plaintiffs can prove the

elements of their claims against Defendants for the refund and return of such sums on a class-wide basis using the same evidence that would be used to prove those elements in any individual action.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.    Few Class members, if any, could afford to seek legal redress individually for the wrongs alleged herein given the amount of the individual claims and the resources of Defendants;

b.    This action will permit an orderly and expeditious administration of the claims of the Class, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c.    Any interest of the Class members in individually controlling the prosecution of separate civil actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d.    Without a class action, Class members will continue to suffer damages and not receive a refund of the sums to which they are entitled and Defendants will continue to reap and retain substantial unearned, risk-free insurance premiums and other sums as pure profit derived from their common wrongful and unlawful practice of withholding unearned insurance premiums and other amounts for coverage and benefits that they cannot earn or provide, and pursuant to coverages and benefits that never became effective.

82.     The Class members have been monetarily damaged and suffered injury in fact as a result of Defendants' unlawful practices in that the Class members have not received the unearned premiums and other amounts to which they are entitled, which Defendants are withholding.

83.     Plaintiffs are not aware of any comparable class action litigation that has been commenced or any management difficulties that would preclude maintenance of this lawsuit as a class action. Plaintiffs do not anticipate any difficulty in the management of this action as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and

benefits of the class action procedure to reduce management challenges. The Court may, on motion of Plaintiffs or *sua sponte*, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## FIRST CAUSE OF ACTION

### DECLARATORY AND INJUNCTIVE RELIEF
**(On Behalf of Plaintiffs and the Class)**

84.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

85.    Plaintiffs assert that Defendants' standard practice and policy of not refunding and returning the unearned pro rata or other portion of the insurance premiums and other amounts they charged and collected for the post-departure coverages and benefits included in each Travel Guard Plan when a covered trip is canceled before departure and before the coverages and benefits begin, is unlawful and in violation of applicable law.

86.    An actual controversy exists between the parties concerning their rights and entitlement to the premiums and other amounts paid in advance for such post-departure coverages and benefits when a covered trip is canceled before departure and before the coverages and benefits become effective.

87.    Plaintiffs request that a judicial determination be made declaring the rights and entitlements of Plaintiffs and the Class and the corresponding duties and responsibilities of Defendants in and to the premiums and other amounts paid in advance for the post-departure coverages and benefits when a covered trip is canceled before departure and before the coverages

begin, and that the Court order and direct Defendants to promptly refund and return the premiums and other amounts paid for said post-departure coverages and benefits to Plaintiffs and the Class, with interest.

88.     Declaratory and/or injunctive relief is necessary to establish the parties' rights in regard to the prepaid amounts Defendants collected when travel is canceled before departure because Defendants acted and will continue to act in concert pursuant to a course of action and pattern of activity affecting all members of the entire, similarly-situated Class as defined above, thereby making declaratory, injunctive and corresponding monetary relief appropriate for the Class.

89.     Such declaratory and/or injunctive relief is also necessary to put an end to Defendants' systematic and unlawful practice of retaining and withholding unearned insurance premiums and other amounts that are justly due their policyholders when insured travel is canceled prior to departure, and before the separate coverages and benefits to be afforded under Defendants' Travel Guard Plans begin and become effective. Such declaratory and/or injunctive relief will establish the rights of each Class member to receive back the unearned premiums and other amounts they are entitled to receive as a result of their premium payments and the subsequent cancelation of planned travel. The resulting monetary relief to which Plaintiffs and the Class are entitled is an incidental consequence of the requested declaration and can be readily ascertained and calculated using Defendants' records, regardless of the policyholders' Travel Guard Plan.

90.     Plaintiffs and the Class of Travel Guard policyholders they seek to represent are without an adequate remedy at law rendering declaratory, injunctive and equitable relief appropriate.

## SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT/RESTITUTION
### (On Behalf of Plaintiffs and the Class)

91.     Plaintiffs repeat and reallege each and every allegation stated above as if fully set forth herein.

92.     Defendants have been unjustly enriched at the expense and to the detriment and prejudice of Plaintiffs and the Class as a result of Defendants' systematic and willful misconduct described above.

93.     Plaintiffs and the Class conferred a benefit upon Defendants in the form of unearned, risk-free premiums that Defendants appreciated and knowingly charged and received from, and refused to refund to and withheld from their policyholders without lawful justification or excuse. Upon information and belief, Defendants will not return the unearned, risk-free premiums that they systematically retained and withheld from their policyholders absent litigation.

94.     Defendants' refusal to refund and return the unearned premium amounts generated when an insured trip is canceled, and when Defendants know that they will never be able to perform and assume the risks for which the coverage was issued, is part of a uniform and systematic practice of Defendants to retain the unearned portion of post-departure insurance premiums when to do so is unlawful.

95.     Defendants' retention of the premium amounts attributable to post-departure travel risks as described herein is unlawful, inequitable and unjust because Defendants are never put at risk for the specific post-departure coverages and benefits for which the policyholders paid Defendants in advance, and for which Defendants can provide no consideration to justify their retention of the unearned premiums.

96.     Because Plaintiffs and the Class members had not yet begun their planned travel, and the post-departure coverages and benefits for which they prepaid, Defendants did not and could never become effective as provided in the Travel Guard Plans. Thus, Defendants' retention of the amounts attributable to the coverages and benefits to cover post-departure contingencies is unjust because the consideration Defendants promised in exchange for those amounts is lacking or failed in its entirety.

97.     Because the risks and contingencies for which the post-departure coverages and benefits were purchased never attached, Defendants' retention of the premium amounts attributable to the coverages and benefits to cover post-departure risks and contingencies is unjust because the consideration Defendants promised in exchange for those amounts is lacking or failed in its entirety.

98.     There is no lawful justification or excuse for Defendants' systematic and willful misconduct. The Travel Guard Plans that Defendants offered and sold to Plaintiffs and other members of the Class do not contain any provision allowing Defendants to retain and withhold any portion of the premiums and other amounts the policyholders paid Defendants in advance and which Defendants did not earn and knew they could never earn or provide coverage or benefits in satisfaction of their promises.

99.     Because Defendants cannot give consideration for the premiums and other amounts allocable to the coverages and benefits they sold for post-departure coverages that never became effective, any provision in Defendants' insurance policy purportedly allowing Defendants to retain such amounts, if such a provision existed, would be void, invalid and unenforceable as a matter of law.

100.    It is inequitable and unjust for Defendants to retain the risk-free premium amounts

they obtained and retained by wrongful conduct and Defendants' retention of such amounts under the circumstances would come at the expense of Plaintiffs and the numerous other Travel Guard policyholders, who are entitled to a refund of the unearned premiums and other amounts. Plaintiffs and the Class are entitled to restitution and/or disgorgement of all the unearned amounts and all profits, benefits and other compensation that Defendants obtained and unlawfully seek to retain as herein alleged.

101.    Given Defendants' wrongful conduct, Plaintiffs and the Class are entitled to an award of pre-judgment interest on the sums unlawfully withheld at the applicable legal rate from the date of cancellation, together with any other injunctive and monetary relief that the Court deems proper.

### THIRD CAUSE OF ACTION

**VIOLATION OF THE PENNSYLVANIA UTPCPL, 73 PA.C.S.A. § 201-1, ET SEQ.**
**(On Behalf of Plaintiffs and the Class)**

102.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

103.    As an insurance company subject to Pennsylvania law, National Union is subject to 73 Pa.C.S.A. § 201-1, et seq., the Pennsylvania Uniform Trade Practices Consumer Protection Law ("PA UTPCPL").

104.    Plaintiffs, the similarly-situated travel insurance policyholders they seek to represent, and Defendants are all "persons" within the meaning of the UTPCPL, and as defined by 73 Pa.C.S.A. § 201-2(2).

105.    Plaintiffs and the other Travel Guard travel insurance policyholders they seek to represent all purchased their Travel Guard Insurance Policies for personal, family and household purposes.

106.     The acts and practices of Defendants were directed to consumers, including Plaintiffs and the numerous other Travel Guard travel insurance policyholders they seek to represent.

107.     As a Pennsylvania insurance company, National Union, alone and together and through Travel Guard Group and/or AIG Travel, conducts trade and commerce in the sale, issuance and administration of Travel Guard Insurance Policies that directly or indirectly affect the people of Pennsylvania and all other states, commonwealths and districts in which Defendants offer and sell the insurance travel insurance policies that Nation Union underwrites as a Pennsylvania insurer.

108.     Through their conduct as described above, Defendants have jointly and severally engaged in unfair or deceptive acts and practices within the meaning of 73 Pa.C.S.A. § 201-2 and 201-3, that resulted in injury to Plaintiffs and the other insurance policyholders they seek to represent.

109.     By virtue of the insured trips of Plaintiffs and other members of the Class being canceled before departure, the consideration (namely, the provision of insurance coverage protecting against post-departure perils and other perils that never became effective or otherwise ceased to exist on cancellation) either became entirely void or materially failed before being performed, because National Union never had to assume the risk of having to cover those perils because the risk never attached.

110.     By reason of the foregoing, Defendants with and through National Union have engaged in unfair and deceptive acts or practices in the sale, issuance, and administration of the Travel Guard Insurance Policies in violation of UTPCPL § 201-2(4)(v) and/or (xxi) by, among other things:

a.  offering and selling travel insurance policies as providing insurance coverage and benefits for post-departure events that could never result in the payment of any claims for any insured when the covered trips were canceled before departure and would never occur, and

b.  refusing to refund and return the unearned premiums attributable to insurance coverage and benefits for post-departure perils that never became effective, or that Defendants canceled, after the trips that Defendants insured were canceled before departure.

111.    Defendants should be enjoined from such unlawful conduct and common practice and course of dealing.

112.    Plaintiffs and the other travel insurance policyholders they seek to represent have each suffered an ascertainable loss of money, including in the form of the unearned premiums retained by Defendants as a result of Defendants' use and employment of deceptive acts or practices.

113.    Defendants are jointly and severally liable to Plaintiffs and the other Travel Guard travel insurance policyholders for all damages suffered as a result of Defendants' misconduct in an amount to be determined at trial.

114.    Pursuant to UTPCPL § 201-9.2, Plaintiffs, for themselves and on behalf of all of the other Travel Guard travel insurance policyholders, request awards of treble damages, reasonable attorneys' fees and costs based on the nature and magnitude of Defendants' misconduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court:

A.    Certify this action and the defined Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and designate Plaintiffs as representatives of, and their undersigned counsel as Counsel for, the Class;

B.    Award Plaintiffs and the Class declaratory, injunctive and the monetary relief incidental thereto as appropriate including the entry of one or more orders or judgments:

    1.    Declaring that Defendants' policy and practice of retaining and withholding unearned premiums and other amounts due under the Travel Guard Insurance Policies is unlawful and violates applicable law;

    2.    Declaring that Defendants are not entitled to retain and withhold the unearned premiums and other amounts paid for post-departure coverage and benefits when insured travel is canceled before departure;

    3.    Enjoining Defendants from continuing to retain and withhold the unearned premiums and other amounts paid for post-departure coverage and benefits when insured travel is canceled before departure;

    4.    Directing Defendants to promptly refund and return such unearned premiums and other amounts paid for the post-departure coverage and benefits to Plaintiffs and the Class, together with interest at the legal rate from the date covered travel was canceled; and

    5.    Granting such other extraordinary equitable and/or injunctive relief as permitted by law, including the imposition of a constructive trust on the unearned premiums and other amounts justly due Plaintiffs and the Class, which Defendants hold.

C.    Enter judgments against each Defendant and in favor of Plaintiffs and the Class based on Defendants' unjust enrichment;

D.    Enter judgments against Defendants and in favor of the Plaintiffs and the Class based on Defendants' joint and respective violations of the Pennsylvania Uniform Trade Practices Consumer Protection Law;

E.    Award Plaintiffs and the Class actual and compensatory damages as allowed by law in an amount to be determined at trial;

F.    Award Plaintiffs and the Class restitution and/or disgorgement of ill-gotten gains, as appropriate;

G.    Award Plaintiffs and the Class costs and reasonable attorneys' fees, as allowed under the Pennsylvania Uniform Trade Practices Consumer Protection Law or other applicable law;

H.    Award Plaintiffs and the Class their costs of suit and reasonable attorneys' fees, as allowed by law pursuant to the common fund doctrine and any other applicable statute, law or rule, together with pre-judgment and post-judgment interest, as

allowed by law; and

I.      Award Plaintiffs and the Class such further and additional relief as the Court deems just and proper.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiffs for themselves and the class they seek to represent designate Kansas City, Kansas as the place of trial.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the proposed Class of persons they seek to represent, hereby demand a trial by jury on all issues so triable.

Dated: May 29, 2020

Respectfully submitted,

WALTERS RENWICK RICHARDS
 SKEENS & VAUGHAN, P.C.

By:   */s/ Kip D. Richards*
  Kip D. Richards – Ks. Bar 70281
  David M. Skeens – Ks. Bar 13994
  1100 Main Street, Ste. 2500
  Kansas City, MO 64105
  (816) 421-6620
  (816) 421-4747 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**