**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **PAUL GUSTAFSON and DEBRA GUSTAFSON,** | ) | |
| **for themselves and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 20-2272-KHV** |
| | ) | |
| **TRAVEL GROUP, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiffs' <u>Complaint–Class Action</u> (Doc. #1) filed May 29, 2020 (35 pages); plaintiffs' Amended <u>Complaint–Class Action</u> (Doc. #14) filed November 13, 2020 (34 pages); <u>Defendants' Motion To Dismiss The Amended Complaint</u> (Doc. #15) filed December 17, 2020 (88 pages); plaintiffs' <u>Memorandum In Opposition To Defendants' Rule (12)(b) Motion To Dismiss The Amended Complaint</u> (Doc. #34) filed January 14, 2021 (78 pages); <u>Defendants' Reply In Support Of Their Motion To Dismiss</u> (Doc. #38) filed January 28, 2021 (33 pages); <u>Plaintiffs' [sic] Supplemental Authority In Opposition To Defendants' Motion To Dismiss The Amended Complaint (ECF. NO. 15) And Defendants' Motion To Strike (ECF NO. 17)</u> (Doc. #43) filed February 22, 2021 (15 pages); <u>Defendants' Motion To Strike</u> (Doc. #17) filed December 17, 2020 (27 pages); <u>Index Of Exhibits To Defendants' Reply In Support Of Their Motion To Strike</u> (Doc. #35) filed January 21, 2021 (2 pages); <u>Corrected Memorandum In Opposition To Defendants' Rule 23(d)(1)(D) Motion To Strike Class Action Allegations</u> (Doc. #31) filed January 31, 2021 (82 pages); <u>Defendants' Reply In Support Of Their Motion To Strike</u> (Doc. #36) filed January 21, 2021 (49 pages); <u>Plaintiffs' Motion To Strike New Arguments Raised In Defendants' Reply Briefs</u> (Doc. #39) filed

February 7, 2021 (7 pages); and <u>Defendants' Opposition To Plaintiffs' Motion To Strike New Arguments</u> (Doc. #42) filed February 22, 2021 (12 pages).  For reasons stated bellow, all motions are overruled and the Court enters various additional orders.

One might think that with nearly 500 pages of briefs on the issue of Article III standing, as taught in Constitutional Law 101 across American law schools, and simple pleading questions under Rule 12(b)(6)—also taught in rudimentary Civil Procedure classes—the Court could promptly and efficiency address the arguments which are lodged in the foregoing motions.  Sadly, no.

What is the problem?

The primary problem is that plaintiffs appear not to have read their complaint or their amended complaint, and with each round of briefing on these motions, plaintiffs get further afield of the actual pleadings in their case.  Their positions seem to have lost their moorings in facts which are outside the pleadings but which appear, for all practical purposes, to be undisputed.  As a result, the issues which the parties tee up in their briefs are more hypothetical than real and they call for judicial opinions that are advisory rather than legally significant.  And ironically, some of the arguments which plaintiffs advance to avoid mootness actually undercut their candidacy to adequately represent a class under Rule 23, Fed. R. Civ. P.  It is long past the time for the parties and the Court to take a mountain-top view of what is going on in this controversy and how to resolve it in a way that is—consistent with Rule 1, Fed. R. Civ. P.—"just, speedy, and inexpensive"

What am I talking about?

As to the individual plaintiffs, both complaints allege that defendants refused (and still refuse) to refund the premium paid for their travel insurance.  But we know that defendants have actually refunded the premium in full.  Both complaints allege that defendants' travel insurance

policies are the same in all 50 states and the District of Columbia.  But the complaints list certain policies which are only issued in certain states or have provisions which only appear in Kansas policies.  We also know that with regard to refunds and policy cancellations, Kansas law is not the same as other jurisdictions and therefore plaintiffs' rights under the policy are not the same as those of policyholders outside of Kansas.  The amended complaint alleges that after their trip was cancelled, plaintiffs requested a refund of the premium. They now insist that even though they apparently have retained the value of the $410.27 refund, they never requested a refund, do not want a refund, and promptly rejected the refund and—by the way—they also do not want a voucher for the value of the refund.  (The theory that plaintiffs "rejected" the refund seems mysterious, if not downright counter-factual.)  Both complaints seek a *pro rata* reimbursement of unearned premiums for post-departure risks that never attached, along with pre-judgment interest.  Having received those amounts and more, plaintiffs now argue that the refund amount is merely a "credit" against any future recovery for money had and received.  (In the briefs, the mathematical underpinnings of this argument escape explanation.)  All of this discussion is completely untethered to the allegations of the actual complaints.  Plaintiffs protest that defendants are scheming to moot their class action claims, arguing that the Court has not had a reasonable opportunity to address them.  But in the 11 months that this suit has been on file—and despite nearly 500 pages of briefing on the subject motions—plaintiffs never filed a motion to certify.  Cf. Rule 23(c)(1)(A), Fed. R. Civ. P. (certification issues to be decided at an "early practicable time").

Speaking of plaintiffs as named representatives of a putative class.  The foregoing contradictions expose fault lines which are potentially fatal to plaintiffs' ability to successfully pursue relief on behalf of a class.  First, and perhaps most importantly, the amended complaint defines the proposed class as "[a]ll persons . . . who . . . purchased a single-trip travel insurance

policy from defendants . . . who did not receive a refund of the pro rata or any other portion of the premiums . . . after the covered trip was canceled before departure."  As we know, plaintiffs are not persons who are in this class definition.  They might be members of a class which purchased a single-trip policy from defendants and which—after the trip was cancelled—(1) never exercised their contractual rights to demand a full refund (contractual rights that only appear in Kansas policies); and (2) nonetheless received and "rejected" full premium refunds.  But that is not the class which plaintiffs claim to represent.  Plaintiffs claim that their claims are typical of the class and that they can adequately represent it, but their argument on that point is far from persuasive. Plaintiffs seek to avoid the problem of arguable mootness by insisting that they continue to have standing, given (1) their economic interest in resolution of the class certification issues; and (2) their desire to shift the cost of litigation to other class members.[1]  In terms of Article III standing, since plaintiffs have never sought class certification, the legal sufficiency of their interest in resolving the issue of class certification is curious—if not frivolous.  It is certainly not clear that plaintiffs' potential inability to resolve class certification issues may constitute "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  More importantly, plaintiffs' stated interest in shifting the cost of litigation to putative class members seems to create an adversarial relationship between them and other members of the putative class.  Furthermore, we know that the 50 states and the District of Columbia do not all have laws which are identical to Kansas insurance law.  Plaintiffs' complaint does not address that structural problem in plaintiffs' request for class relief, or the fact that no other named plaintiffs have stepped forward to vindicate the rights of putative class members in

---

[1]         If these are not the hallmarks of attorney-driven class action practice, it is hard to imagine what would be.

jurisdictions which have different insurance laws.

Although the Constitution does not fully explain what is meant by "[t]he judicial Power of the United States," Art. III, § 1, it does specify that this power extends only to "Cases" and "Controversies," Art. III, § 2.  And "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976)).  Prior to certification, a putative class is not an independent juridical entity that is capable of satisfying the standing requirements of Article III— so perhaps plaintiffs must search in vain for cases which allow them to piggyback on the interests of absent class members to shore up deficiencies in their own lack of Article III standing.  Nothing in the complaint or amended complaint supplies appropriate allegations in this regard. Consequently, the mooting of the claims of the named plaintiffs may well moot the claims of the putative class.  See Franks v. Bowman Transp. Co., 424 U.S. 747, 755–56 (1976); Sosna v. Iowa, 419 U.S. 393, 399 (1975).   An exception may apply where defendants "pick off" the named plaintiffs before a class action can be certified.  See Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1250 (10th Cir. 2011) (citing Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980)); Wilson v. Gordon, 822 F.3d 923, 947 (6th Cir. 2016); Fontenot v. McCraw, 777 F.3d 741, 747–51 (7th Cir. 2015).  As noted, however, plaintiffs have never sought class certification. Where plaintiffs have had ample time to file the class certification motion, district courts adhere to the general rule that the mooting of named plaintiffs' claims prior to class certification moots the entire case.  See Jones v. CBE Group, Inc., 215 F.R.D. 558, 565 (D. Minn. 2003); Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F. Supp. 2d 157, 159–61 (E.D.N.Y. 2003).

Because the facts of this case are so out of synch with developments on the ground, and plaintiffs' legal theories have far outrun the boundaries of the complaint and amended complaint, any resolution of the pending motions would constitute merely an advisory opinion—at best, fodder for bragging rights or settlement discussions, if any.  Another important factor which counsels against deciding these motions is that defendants seek dismissal with prejudice, on the theory that plaintiffs cannot amend their amended complaint to avoid mootness or state actionable claims.  Neither side has adequately addressed that issue and the Court would be forced to speculate about how plaintiffs might try to re-structure their claims to create a viable class with adequate representation on claims that are typical of those of the class.  Accordingly, the Court overrules all pending motions.  The Court also orders as follows:

1.      As soon as possible, at a date of his choosing, counsel shall participate in mediation before the Honorable Kenneth G. Gale in Wichita, Kansas.  If the parties are unable to reach a settlement, Judge Gale shall place this case on a fast track for discovery and pre-trial preparation, with trial on January 3, 2022.  If a class settlement is reached at some point before that date, it must be sufficiently in advance of trial that notice and all other settlement procedures can be completed before that date.  The Court will not continue the trial or cancel the trial setting to accommodate a last-minute class settlement.

2.      Plaintiffs no later than May 7, 2021, shall file a motion for leave to amend their complaint.  Unless the case is otherwise resolved, all counsel shall appear in person for a status conference before the undersigned judge at 1:00 p.m. on May 12, 2021.  At that time, counsel shall be prepared to discuss (a) whether plaintiffs should be granted leave to further amend; (b) a schedule to expedite the briefing and resolution of any further motions to dismiss (including reduced page limits); (c) whether plaintiffs have a coherent theory of relief which is adjusted to fit

the facts which plaintiffs have, not the facts they wish they have; and (d) if the Court dismisses any second amended complaint, whether that dismissal should be (i) with or without prejudice and (ii) with or without sanctions.  <u>See</u> Rule 11, Fed. R. Civ. P.  In that regard, the Court specifically reminds counsel of their obligations to the Court under Rule 11(b)(1)–(4).  It also admonishes them that even short of sanctions, the conduct of plaintiffs' counsel will be an important factor in deciding whether—going forward—they can fairly and adequately represent the interests of any class.  Rule 23(g)(4), Fed. R. Civ. P.

**SO ORDERED**.

**IT IS HEREBY FURTHER ORDERED** that <u>Defendants' Motion To Dismiss The Amended Complaint</u> (Doc. #15) filed December 17, 2020, <u>Defendants' Motion To Strike</u> (Doc. #17) filed December 17, 2020, <u>Plaintiffs' Motion To Strike New Arguments Raised In Defendants' Reply Briefs</u> (Doc. #39) filed February 7, 2021 are **OVERRULED**.

Dated this 29th day of April, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge